**Entered on Docket**
**March 08, 2007**
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

**Signed: March 07, 2007**



```
_____
     LESLIE TCHAIKOVSKY
     U.S. Bankruptcy Judge
_____
```

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | No. 05-44314 TT |
| RICHARD CONRAD LAM, | Chapter 7 |
|     Debtor. | |
| _____/ | |
| CAROL A. LAM, | A.P. No. 05-4455 AT |
|     Plaintiff, | |
|   vs. | |
| RICHARD CONRAD LAM, | |
|     Defendant. | |
| _____/ | |
| BARRY L. SIDERS | A.P. No. 05-04447 AT |
|   vs. | (Consolidated for Trial) |
| RICHARD CONRAD LAM, | |
|     Defendant. | |
| _____/ | |

**MEMORANDUM OF DECISION AFTER TRIAL**

In one of the two above-captioned adversary proceedings, Carol Lam ("Carol"), the former spouse of the debtor Richard Conrad Lam ("Richard"), seeks to except a debt in the amount of $208,500 based

on a state court judgment in the couple's dissolution proceeding (the "Conversion Debt") from Richard's chapter 7 bankruptcy discharge pursuant to either 11 U.S.C. § 523(a)(4) or § 523(a)(15). In the second adversary proceeding, Carol's dissolution attorney ("Siders") seeks to except from Richard's discharge pursuant to 11 U.S.C. § 523(a)(15) a $29,000 debt for attorneys' fee that Richard was ordered to pay to Siders as a sanction in the dissolution proceeding (the "Attorneys' Fee Debt"). For the reasons stated below, the Court concludes that the Conversion Debt is nondischargeable under 11 U.S.C. § 523(a)(4) and that the Attorneys' Fee Debt is nondischargeable under 11 U.S.C. § 523(a)(15).

**SUMMARY OF FACTS**

In 1999, a marital dissolution proceeding was commenced in state court to dissolve Carol's and Richard's marriage. Various evidentiary hearings were conducted during the proceeding. In one of these hearings, the issue was whether Richard was liable to reimburse Carol for $417,000 of community property that he had used to pay a pre-marital debt: i.e., child support for his children from a prior marriage.

The state court judge, the Honorable James H. Libbey ("Judge Libbey"), concluded that Richard was liable to reimburse Carol on this account. In November 2004, he issued a decision (the "Libbey Decision"), ordering Richard to reimburse Carol for either one-half

2

of the $417,000, if he used his separate property to make the reimbursement, or for the entire amount, if he used community property. He based this decision on Cal. Fam. Code § 915 which gives a spouse a right of reimbursement in a dissolution proceeding when the other spouse has used community property to pay child or spousal support from a prior marriage when he or she had separate property income available.[1] He found that, during the marriage, Richard had separate property available to pay the child support from his prior marriage in the form of separate property retirement and investment accounts.

On August 4, 2005, Richard filed a bankruptcy petition, commencing the above-captioned chapter 7 case.[2] Thereafter, the two above-captioned adversary proceedings were filed, seeking to except the Conversion Debt and the Attorneys' Fee Debt from Richard's discharge. The two proceedings were consolidated for trial, were tried to the Court on February 12, 2007, and, at the

---

[1] Cal. Fam. Code § 915 provides, in pertinent part, as follows: "...a child or spousal support obligation of a married person that does not arise out of the marriage shall be treated as a debt incurred before marriage....(b) If property in the community estate is applied to the satisfaction of a child or spousal support obligation of a married person that does not arise out of the marriage, at a time when nonexempt separate income of the person is available but is not applied to the satisfaction of the obligation, the community estate is entitled to reimbursement from the person in the amount of the separate income,...." Cal. Fam. Code § 915 (2007).

[2] As a result, Richard's case and these adversary proceedings are not governed in any pertinent aspect by the changes to the Bankruptcy Code made by the Bankruptcy Abuse Prevention and Consumer Protections Act of 2005 ("BAPCPA").

3

conclusion of the trial, were taken under submission.

**DISCUSSION**

**A.  APPLICABLE LAW**

The Bankruptcy Code is designed to afford individual debtors a "fresh start." In re Bugna, 33 F.3d 1054, 1059 (9th Cir. 1994). Dischargeability provisions are generally construed liberally in favor of debtors. Id.  However, 11 U.S.C. § 523(a) limits the scope of the "fresh start" by denying the debtor a discharge for certain types of debts. In re Bammer, 131 F.3d 788, 793 (9th Cir. 1997) (en banc).  In Cohen v. de la Cruz, 523 U.S. 213 (1998), the Supreme Court explained that "[t]he various exceptions to discharge in 523(a) reflect a conclusion on the part of Congress 'that the creditors' interest in recovering full payment of debts in these categories outweigh[s] the debtors' interest in a complete fresh start.'" Id. at 222 (quoting Grogan v. Garner, 498 U.S. 279, 287 (1991)).

Section 523(a)(4) excepts from an individual debtor's chapter 7 discharge a debt for defalcation while acting in a fiduciary capacity.  See 11 U.S.C. § 523(a)(4); Banks v. Gill Distribution Centers, Inc., 263 F.3d 862, 870 (9th Cir. 2001).  Defalcation has been defined as the "misappropriation of trust funds or money held in any fiduciary capacity; [the] failure to properly account for such funds.  Under § 523(a)(4), defalcation includes the innocent default of a fiduciary who fails to account fully for money

4

received." In re Lewis, 97 F.3d 1182, 1186 (9th Cir. 1996) (quoted in Banks at 870). Such a debt is nondischargeable under § 523(a)(4) only "where (1) an express trust existed, (2) the debt was caused by fraud or defalcation, and (3) the debtor acted as a fiduciary to the creditor at the time the debt was created." In re Niles, 106 F.3d 1456, 1459 (9th Cir. 1997).

Section 523(a)(15) excepts from an individual debtor's chapter 7 discharge a nonsupport debt arising from a dissolution proceeding under Section 523(a)(15) unless the debtor is either unable to pay the debt or the debtor would suffer greater prejudice if the debt were excepted from his discharge than the debtor's former spouse would suffer if the debt were discharged. See 11 U.S.C. § 523(a)(15).[3]

Generally, the plaintiff in a nondischargeability action bears the burden of proof on all elements of the claim by a preponderance of the evidence. See Grogan v. Garner, 498 U.S. 279 (1991). Thus, Carol has the burden to proof with respect to her claim to except the Conversion Debt from Richard's discharge pursuant to 11 U.S.C. § 523(a)(4). However, once the party seeking to except a debt under 11 U.S.C. § 523(a)(15) meets her burden of proving that the debt is a nonsupport debt arising from a dissolution proceeding, the burden shifts to the debtor to prove that he is unable to pay

---

[3] BAPCPA amended 11 U.S.C. § 523(a)(15) so that all dissolution related debts are now nondischargeable. See 11 U.S.C. § 523(a)(15)(2005). However, as noted above, this proceeding is not subject to BAPCPA.

5

the debt. <u>In re Jodoin</u>, 209 B.R. 132 (Bankr. 9th Cir. 1997); <u>In re Morris</u>, 193 B.R. 949, 952 (Bankr. S.D. Cal. 1996).

**B.   DISCHARGEABILITY OF CONVERSION DEBT UNDER 11 U.S.C. § 523(a)(4)**

As set forth above, 11 U.S.C. § 523(a)(4) renders nondischargeable a debt for defalcation by a fiduciary. The question of whether the debtor was a fiduciary with respect to the claimant is governed by federal law. <u>In re Cantrell</u>, 329 F.3d 1119, 1125 (9th Cir. 2003); <u>In re Gergely</u>, 110 F.3d 1448, 1450 (9th Cir. 1997). Under federal law, the fiduciary relationship must arise from an express trust imposed before and without reference to the wrongdoing that created the debt. <u>Cantrell</u>, 329 F.3d at 1125; <u>In re Lewis</u>, 97 F.3d 1182, 1185 (9th Cir. 1996). However, state law is consulted to determine whether the requisite trust relationship exists. <u>Cantrell</u>, 329 F.3d at 1125; <u>Lewis</u>, 97 F.3d at 1185.

Under the California law, spouses act as fiduciaries *inter se* with respect to the management and control of the community assets. Cal. Family Code §§ 1100(e), 1101(a) (2007). These provisions make spouses fiduciaries with respect to community property in the narrow sense required by 11 U.S.C. § 523(a)(4). Thus, a defalcation by a debtor with respect to his use of the community property will give rise to a nondischargeable debt under 11 U.S.C. § 523(a)(4).

As noted above, based on the evidence presented to him at

6

trial in the dissolution proceeding, Judge Libbey found that Richard used $417,000 of community property to pay child support from a prior marriage at a time when he had separate property in the form of retirement and investment accounts available to make the payments. Based on this finding, Judge Libbey ordered Richard to reimburse Carol for this use of their community property. He based this order on the conclusion that Richard had breached Cal. Fam. Code § 915(b) which requires a spouse to make such payments first from separate property income if possible.

Richard contends that, although this order created a debt to Carol, it did not constitute a debt arising from a breach of his fiduciary duty. He notes that Cal. Fam. Code § 915(b) requires only that separate property income be used first to make child support payments from a prior marriage, not separate property. He notes that the only evidence presented was that he had separate property, not separate property income, at the time he made the payments.

This argument might be persuasive if one was limited to an examination of the plain language of the statute. However, the comments to Cal. Fam. Code § 915 indicate that the the California Legislature used the terms "income" and "property" interchangeably. See Cal. Fam. Code § 915 cmt. (2007) ("the general rule is that the separate property of the obligor spouse and the community estate of the marriage is liable for the support obligation [of the prior

7

marriage], other than the earnings of the non-obligor spouse"). Based on the foregoing, the Court concludes that Richard's use of the community property to pay child support from his prior marriage constituted a breach of fiduciary duty under 11 U.S.C. § 523(a)(4). Thus, the Conversion Debt is nondischargeable.

**C.  DISCHARGEABILIITY OF ATTORNEYS' FEE DEBT UNDER 11 U.S.C. § 523(a)(15)**

Siders seeks to except the $29,000 Attorneys' Fee Debt pursuant to 11 U.S.C. § 523(a)(15).[4]  As noted above, Siders has the initial burden of establishing that the debt sought to be excepted from the debtor's discharge under 11 U.S.C. § 523(a)(15) is a nonsupport debt arising in connection with a dissolution proceeding.  This burden was easily satisfied.  The burden then shifted to Richard to establish either that he is unable to pay the Attorneys' Fee Debt or that he would be more greatly prejudiced if the Attorneys' Fee Debt were excepted from his discharge than Carol would be if it were discharged.  Richard presented no evidence concerning Carol's financial condition nor did Carol.  As a result, the Court has no basis for balancing the equities.  Thus, Richard was required to prove, by a preponderance of the evidence, that he was unable to pay the Attorneys' Fee Debt.  See 11 U.S.C. § 523(a)(15)(A).

---

[4]Carol asserted 11 U.S.C. § 523(a)(15) as an independent ground for excepting the Conversion Debt from Richard's discharge. Since the Court concludes that the Conversion Debt is nondischargeable under 11 U.S.C. § 523(a)(4), it need not consider this alternative ground.  However, the Court is mindful that, based on its ruling, the Conversion Debt will survive Richard's discharge and thus affect his ability to pay the Attorneys' Fee Debt.

8

The evidence presented established that Richard is 63 years old, in relatively good health, and is an experienced tax attorney with a history of earning in excess of $200,000 a year.[5] From 1998 to 2001, he was employed as an area director in the International Tax Group with Ernst & Young LLP in Houston, Texas. Before that, he was employed by Pricewaterhouse Coopers, Chevron Corporation, and the Gulf Oil Corporation. According to Richard, in 2001, he was terminated by Ernst & Young. He moved back to California and attempted to obtain employment in the field of his tax specialty. When he was unsuccessful, he took the California Bar Examination, and began practicing law as a sole practitioner, primarily in the area of family law, with which he had no prior experience.

Richard testified that his net income during 2005 was $23,317 and during 2006 $16,925. He testified that his income during 2006 is more indicative of his ability to pay his debts since in 2005 he earned a one-time consulting fee of $18,000. His personal expenses are approximately $21,000 per year. In addition to his personal expenses, for the next three years, he is obligated to pay $1,171 per month in child support and $964 per month in alimony. He also has nondischargeable debt for child support arrearages of $167,288, tax debt of $38,718, and, now the $208,500 Conversion Debt, for a total of $414,506. He contends that this is sufficient to

---

[5] Richard testified that he had some health problems. However, the Court was not convinced that these problems were sufficiently serious to interfere with his ability to work for the next ten years or so.

9

meet his burden of proving by a preponderance of the evidence that he is unable to pay the Attorneys' Fee Claim.

The Court is not persuaded. The Court accepts as a possibility that Richard's financial circumstances will not improve during the remainder of his working life or at least not sufficiently to pay his other nondischargeable debt and the Attorneys' Fee Debt. However, the Court finds that it is equally possible that Richard will continue to practice law for another ten years and that his income will increase substantially. This could occur in various ways. He could find employment at a creditable law firm. The Court is unable to believe that an experienced tax attorney, employed by a creditable firm, would be paid less than $150,000 a year. With a salary of this amount, given a continued working life of another ten years, Richard could easily pay all his nondischargeable debt, including the Attorneys' Fee Debt. Alternatively, Richard could decide to continue to practice on his own, perhaps even in the family law area. Again, it is not unreasonable to expect a family law attorney to earn $150,000 annually.

Since the Court finds that either scenario is equally possible, it is forced to conclude that Richard has failed to meet his burden of proving an inability to pay the Attorneys' Fee Claim. Moreover, 11 U.S.C. § 523(a)(15) requires the Court to consider the debtor's property as well as his income in determining his ability

to pay a nonsupport debt arising from a dissolution proceeding. It was undisputed that Richard has approximately $186,900 in an Individual Retirement Account. Although this amount would be subject to taxation when withdrawn, even if it were reduced in this fashion, it would still provide a substantial additional amount with which Richard could either pay his personal expenses or his nondischargeable debt. Based on these findings, the Court concludes that the Attorneys' Fee Debt is nondischargeable under 11 U.S.C. § 523(a)(15).

## CONCLUSION

The Court concludes that the Conversion Debt is nondischargeable under 11 U.S.C. § 523(a)(4). Carol's right to reimbursement pursuant to Cal. Fam. Code § 915(b) for half the community property used by Richard to pay child support from his prior marriage qualifies as a debt for defalcation by a fiduciary within the meaning of 11 U.S.C. § 523(a)(4). The Court concludes that the Attorneys' Fee Claim is nondischargeable under 11 U.S.C. § 523(a)(15). While Richard has limited income at present and substantial other nondischargeable debt, including now the Conversion Debt, Richard failed to persuade the Court that, more likely than not, his future income would not be sufficient to enable him to pay the Attorneys' Fee Debt. Counsel for Carol is directed to submit a proposed form of judgment in accordance with this decision.

END OF DOCUMENT

12

COURT SERVICE LIST

Chris D. Kuhner
Kornfield, Paul & Nyberg, P.C.
1999 Harrison Street, Suite 2675
Oakland, CA 94612

Richard C. Lam
1470 Creekside Drive, Unit 6
Walnut Creek, CA 94596

Jon R. Vaught
Law Offices of Vaught and Boutris
80 Swan Way #320
Oakland, CA 94621